Robert A. Mittelstaedt (60359)
Jason McDonell (115084)
Brian D. McDonald (224201)
JONES DAY
555 California Street, 26th Floor
San Francisco, CA 94104
Telephone:     (415) 626-3939
Facsimile:     (415) 875-5700
E-mail:         ramittelstaedt@jonesday.com

Shay Dvoretzky (*Admitted Pro Hac Vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001.2113
Telephone:     (202) 879-3939
Facsimile:     (202) 626-1700
E-mail:         sdvoretzky@jonesday.com

Attorneys for Defendant
JONES DAY

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re:** | **CASE NO. 11-31376 DM** |
| **HOWREY LLP,** | **Chapter 11** |
| **Debtor.** | **ADV. PROC. NO. 13-03093** |
| | **JONES DAY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| **ALLAN B. DIAMOND, Chapter 11 Trustee for Howrey LLP,** | Date:      July 29, 2013 |
| **Plaintiff,** | Time:      9:30 a.m. |
| **v.** | Dept:      Courtroom 22 |
| | 235 Pine Street |
| | San Francisco, CA 94111 |
| **JONES DAY,** | Judge:      Hon. Dennis Montali |
| **Defendant.** | Trial Date:  None Set |

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 1 of 26

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......................................................................................................... 1

II. ARGUMENT ................................................................................................................. 2

    A.    THE DISTRICT COURT'S DECISION IN *HELLER* AND THE NEW YORK COURT OF APPEALS' DECISION IN *COUDERT* DEMONSTRATE THAT THE FAC FAILS AS A MATTER OF LAW .............. 2

        1.    A Law Firm Does Not Own Client Matters ................................ 3

        2.    *Jewel* is Not Controlling ......................................................... 4

        3.    Equity and Public Policy Bolster the Conclusion that a Dissolved Firm Has No Right to Profits It Did Not Earn ........................................... 8

        4.    The Trustee's Attempts to Evade the District Court's Decision in *Heller* Are Unavailing................................................................. 9

    B.    THE TRUSTEE'S CLAIMS REGARDING PRE-DISSOLUTION MATTERS FAIL FOR ADDITIONAL, INDEPENDENT REASONS .............. 13

        1.    The Trustee's Claim for Equitable Accounting Fails Because Jones Day Has No Fiduciary Duty To Howrey .................................. 13

        2.    The FAC Fails to State a Claim for Unjust Enrichment Under D.C. Law................................................................................................. 16

        3.    The Trustee's § 542 Claims for Accounting and Turnover Are Legally Unsupportable ........................................................ 18

    C.    IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN FROM DECIDING THESE IMPORTANT AND NOVEL STATE-LAW QUESTIONS ................................................................................... 19

III. CONCLUSION .............................................................................................................. 20

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 2 of 26

**TABLE OF AUTHORITIES**

Page

CASES

*Amoco Oil Co. v. EPA,*
  543 F.2d 270 (D.C. 1976) ................................................................. 15

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................ 17

*Avianca Inc. v. Corriea,*
  No. 85-3277, 1992 WL 93128 (D.D.C. Apr. 13, 1992) ......................... 16

*Bates v. Nw. Human Servs., Inc.,*
  466 F. Supp. 2d 69 (D.D.C. 2006) ................................................ 15, 17

*Beckman v. Farmer,*
  579 A.2d 618 (D.C. 1990) ................................................................ 7, 9

*Burr v. State Bank,*
  344 Il1. App. 332 (1951) ................................................................... 14

*Cafritz v. Corporation Audit Co.,*
  60 F. Supp. 627 (D.D.C. 1945) .......................................................... 14

*Cobbell v. Babbit,*
  30 F. Supp. 2d 24 (D.D.C. 1998) ....................................................... 14

*Convit v. Wilson,*
  980 A.2d 1104 (D.C. 2009) ................................................................ 16

*Donovan v. U.S. Postal Serv.,*
  530 F. Supp. 894 (D.D.C. 1981) ........................................................ 15

*Exec. Benefits Ins. Agency v. Arkison,*
  702 F.3d 553 (9th Cir. 2012), *aff'd* 573 U.S. __, 134 S. Ct. 2165 (2014) ............................ 19

*Glassey v. Amano Corp.,*
  No. 05-01604, 2006 WL 889519 (N.D. Cal. Mar. 31, 2006) ................... 19

*Haynes v. Navy Fed. Credit Union,*
  -- F. Supp. 2d --, 2014 WL 2591371 (D.D.C. Jun. 10, 2014) ........................ 13, 14

*Heller Ehrman LLP v. Jones Day,*
  -- B.R. --, 2014 WL 2609743 (N.D. Cal. Jun. 11, 2014) ................................ passim

*In re Brobeck, Phleger & Harrison LLP,*
  408 B.R. 318 (Bankr. N.D. Cal. 2009) ........................................... 3, 10, 12

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 3 of 26

*In re Eastport Assoc.*,
   935 F.2d 1071 (9th Cir. 1991) ............................................................. 19

*In re Gurga*,
   176 B.R. 196 (9th Cir. B.A.P. 1994) ................................................... 19

*In re Hatfield*
   Adv. P. No. 08-3140, 2009 WL 2849538, at *2 (Bankr. N.D. Cal. Jul. 17, 2009) ................ 20

*In re Hill*,
   440 B.R. 176 (Bankr. S.D. Cal. 2010) ............................................... 9

*In re Lazar*,
   237 F.3d 967 (9th Cir. 2001) ............................................................ 20

*In re Linda Vista Cinemas, L.L.C.*,
   442 B.R. 724 (Bankr. D. Ariz. 2010) .................................................. 9

*In re Lorazepam & Clorazepate*,
   295 F. Supp. 2d 30 (D.D.C. 2003) ..................................................... 17

*In re Pac. Gas & Elec. Co.*,
   279 B.R. 561 (Bankr. N.D. Cal. 2002) ............................................... 19

*In re Robert W. Mance, III*,
   980 A.2d 1196 (D.C. 2009) ............................................................. 10

*In re Romano*,
   350 B.R. 276 (Bankr. E.D. La.2005) ................................................. 9

*In re Thelen LLP*,
   -- N.E.3d --, 2014 WL 2931526 (N.Y. Jul. 1, 2014) ("*Coudert*") .................. passim

*Int'l Bhd. of Teamsters v. Ass'n of Flight Attendants*,
   663 F. Supp. 847 (D.D.C. 1987) ....................................................... 16

*Jewel v. Boxer*,
   156 Cal. App. 3d 171 (1984) ........................................................... passim

*Kirksey Motors, Inc. v. General Acceptance Corp.*,
   276 Ala. 270 (1964) ....................................................................... 14

*Life Ins. Co. v. Barakat* (*In re Barakat*),
   173 B.R. 672 (Bankr. C.D. Cal. 1994) ............................................... 9

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

iii

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 4 of 26

*McDevitt v. Wells Fargo Bank, N.A.*,
    946 F. Supp. 2d 160 (D.D.C. 2013) ............................................................... 15

*Neuman v. Akman*,
    715 A.2d 127 (D.C. 1998) ............................................................................ 10

*Nevius v. Africa Inland Mission Int'l*,
    511 F. Supp. 2d 114 (D.D.C. 2007) .......................................................... 16, 17

*News World Commc'ns Inc. v Thompson*,
    878 A.2d 1218 (D.C. 2005) .......................................................................... 17

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*,
    No. 04-332, 2006 WL 2711527 (D.D.C. Sept. 21, 2006) .............................. 16

*Omega Contracting, Inc. v. Torres*,
    191 S.W.3d 828 (Tex. App. 2006) ................................................................ 15

*Robinson v. Nussbaum*,
    11 F. Supp. 2d 1 (D.D.C. 1997) ................................................................ 7, 14

*Rosenak v. Poller*,
    290 F. 2d 748 (D.C. Cir. 1961) .................................................................... 15

*Sec. Farms v. Int'l Bhd. of Teamsters*,
    124 F.3d 999 (9th Cir. 1997) ....................................................................... 20

*State Compensation Ins. Fund v. Zamora* (*In re Silverman*),
    616 F.3d 1001 (9th Cir. 2010) ....................................................................... 9

*State Farm Gen. Ins. Co. v. Stewart*,
    681 N.E.2d 625 (Ill. App. Ct. 1997) ........................................................... 17

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011) ................................................................................. 19

*Terner v. Glickstein & Terner*,
    283 N.Y. 299 (1940) ................................................................................... 14

*United States v. Alexander*,
    106 F.3d 874 (9th Cir. 1997) ....................................................................... 10

*United States v. Bertoli*,
    994 F.2d 1002 (3d Cir. 1993) ...................................................................... 12

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 5 of
26

*Warren v. Chapman*,
535 A.2d 856 (D.C. 1987)............................................................... 14

*Young v. Delaney*,
647 A.2d 784 (D.C. 1994)................................................................. 7


**STATUTES**

11 U.S.C. § 542 ........................................................................ passim

28 U.S.C. § 1334(c)(1) ................................................................. 19

28 U.S.C. § 1334(c) .................................................................... 20

28 U.S.C. § 1452(b)… .................................................................. 20

D.C. Code § 11-723(a) ................................................................. 19

D.C. Code § 33-104.04(b)(1) ........................................................... 8

D.C. Code § 33-106.03(b)(3) ........................................................... 7

Fair Labor Standards Act. ............................................................ 15

RUPA .............................................................................. passim

UPA ............................................................................... passim


**OTHER AUTHORITIES**

C.C. Langdell, *A Brief Survey of Equity Jurisdiction*, 2 HARV. L. REV. 241, 248 (1887) ........... 14

Dan B. Dobbs, LAW OF REMEDIES, vol. I, 610 (2d ed. 1993) ...................................... 14

Restatement (Third) of Restitution and Unjust Enrichment (2011)............................... 18

Richard A. Epstein, *In Defense of the Contract at Will*,
51 U. CHI. L. REV. 947, 951 (1984) ........................................................ 11, 12

*Ruling Limits Defunct Law Firms' Claims to Unfinished Business* (Jul. 1, 2014), *available at* http://blogs.wsj.com/law/2014/07/01/ruling-limits-defunct-law-firms-claims-to-unfinished-business/.................................................................... 1

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

v

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 6 of 26

# I.   **INTRODUCTION**

**A.**     As the District Court's recent decision in *Heller* and the New York Court of Appeals' decision in *Coudert* make clear, Howrey has no property interest in the matters at issue or in the profits that Jones Day earned on those matters.  Pre- or post-dissolution, Howrey *never* owned any of its client matters; it had only an interest in fees for work that it actually performed. *Jewel* and related cases under D.C. law do not create a property interest in client matters.  Not only have these cases been superseded by RUPA, but they are inapposite where, as here, a law firm dissolves and is unable to serve its clients, who hire third-party firms to represent them. Moreover, as both Judge Breyer and the New York Court of Appeals recognized, the Trustee's position contravenes bedrock principles regarding the attorney-client relationship, client choice, and lawyer mobility.  The logic and principles of the *Heller* and *Coudert* decisions apply under any state's laws.  Indeed, in the words of the plan administrator for the Coudert bankruptcy estate, these recent decisions "put a stake in the heart of unfinished business claims around the country."[1]

Each of the Trustee's claims rests upon the premise—soundly rejected by *Heller* and *Coudert*—that Howrey has a property interest in the matters at issue and the profits earned by Jones Day.  Absent such an interest, no property belonging to Howrey was fraudulently transferred to Jones Day; there is no property belonging to Howrey for which Jones Day could be required to account; Jones Day was not unjustly enriched by any of Howrey's property; and there is no property to turn over under § 542.  Therefore, this Court should dismiss the First Amended Complaint ("FAC") in its entirety.

**B.**     The Trustee's claims regarding the pre-dissolution matters are also legally unsupportable for additional, independent reasons.  *First*, the claim for accounting fails as a matter of law because, as the Trustee concedes, Jones Day never owed a fiduciary duty to Howrey.  Contrary to the Trustee's unsubstantiated argument, an accounting claim cannot be

---

[1] The Wall Street Journal, *Ruling Limits Defunct Law Firms' Claims to Unfinished Business* (Jul. 1, 2014), *available at* http://blogs.wsj.com/law/2014/07/01/ruling-limits-defunct-law-firms-claims-to-unfinished-business/.

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 7 of 26

based solely on an alleged need for discovery from the defendant.  Nor can Jones Day be held liable based on the fiduciary duty allegedly owed by Howrey's former partners to Howrey.  The New York Court of Appeals repudiated the principal authority cited by the Trustee for this proposition—the district court's decision in *Coudert*.

*Second*, the Trustee's claim for unjust enrichment fails under D.C. law.  Under the Trustee's theory, any alleged benefit was conferred on Jones Day by a third party, not by Howrey.  That alone dooms the Trustee's claim because D.C. law allows a plaintiff to bring an unjust enrichment claim only if the *plaintiff* conferred a benefit on the defendant.  In addition, there is nothing unjust about Jones Day keeping money that it earned from clients for work that it performed.

*Finally*, the Trustee's § 542 claims for accounting and turnover also fail.  This Court has already dismissed materially identical claims, and the Trustee cannot justify a different result here.  In any event, because the Trustee has failed to plead any theory under which the profits at issue are the undisputed and liquidated "property" of the estate, he cannot properly invoke § 542.

## II.  <u>ARGUMENT</u>

### A.  THE DISTRICT COURT'S DECISION IN *HELLER* AND THE NEW YORK COURT OF APPEALS' DECISION IN *COUDERT* DEMONSTRATE THAT THE FAC FAILS AS A MATTER OF LAW

In opposing Jones Day's Motion to Dismiss the Original Complaint, the Trustee urged this Court to follow its own earlier decisions in the Heller and Brobeck bankruptcies, and the Southern District of New York's decision in the Coudert bankruptcy.  But the District Court has now reversed this Court's decision in *Heller*, and the New York Court of Appeals has rejected the reasoning of the *Coudert* district court.  *Heller Ehrman LLP v. Jones Day*, -- B.R. --, 2014 WL 2609743 (N.D. Cal. Jun. 11, 2014); *In re Thelen LLP*, -- N.E.3d --, 2014 WL 2931526 (N.Y. Jul. 1, 2014) ("*Coudert*").[2]  These developments show that the FAC should be dismissed in its entirety.

---

[2] The New York Court of Appeals issued a single opinion addressing the identical certified questions arising from the Thelen and Coudert bankruptcy proceedings.

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

2

Case: 13-03093   Doc# 41   Filed: 07/16/14   Entered: 07/16/14 17:07:23   Page 8 of 26

The decisions by Judge Breyer and the New York Court of Appeals refute the core premises of this Court's earlier holdings. *First*, both Judge Breyer and the New York Court of Appeals held that a dissolving law firm has no property interest in profits earned by a third-party firm on hourly-rate matters previously handled by the dissolving firm. *Compare* Order on Motion to Dismiss, ECF No. 28 at 10-12 ("*Howrey I*") (concluding, in reliance on the district court's decision in *Coudert*, that a dissolved law firm has a property interest in pending hourly-fee matters); *id.* at 22-24 (concluding that *Heller I* and *Heller II*, which held that "Heller's unfinished business was property of Heller," "apply with equal force" here). *Second*, the District Court explained that *Jewel v. Boxer*, 156 Cal. App. 3d 171 (1984), and similar cases involving the so-called "unfinished business" doctrine are not controlling in the factual or legal context of cases like this one. *Heller* and this case differ from *Jewel* because RUPA applies rather than UPA, and because the clients of Heller and Howrey retained third-party firms to handle matters that their former firms abandoned. *Compare* ECF No. 28 at 2-3 (citing *In re Brobeck, Phleger & Harrison LLP*, 408 B.R. 318 (Bankr. N.D. Cal. 2009), which in turn relied on *Jewel*, to hold that Howrey has a property interest in the matters at issue). On similar facts, the New York Court of Appeals also concluded that New York cases involving the "unfinished business" doctrine are inapposite. *Third*, both courts concluded that it would be inequitable and would contravene important public policies, including a client's right to choose counsel, if a dissolved firm that could no longer serve its clients nevertheless had a property interest in profits earned by a third party. *Compare id.* at 16-17 (concluding, based on *Heller II*, that "the right of a client to choose its lawyers is not implicated here"). The logic of these decisions "appl[ies] with equal force" here. *Id.* at 23.

## 1.    A Law Firm Does Not Own Client Matters

In *Heller*, the District Court first explained that, as a matter of law, "[a] law firm never owns its client matters." 2014 WL 2609743 at *5. "A client, for whatever reason, may summarily discharge counsel and hire someone else," at which point the former counsel is entitled only to "fees . . . for services performed to the date of discharge." *Id.* at *1. Thus, "the most [a] law firm can be said to have is" a right to be paid for services that it actually performs,

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 9 of
26

and "an *expectation* of future business." *Id.* at \*5. That *expectation* "disappear[s] as soon as either (1) the client removes the business, which it can do at will, or (2) the law firm ceases to be able to perform the work [necessary] to generate [any] expected future profits." *Id.* at 6.

The New York Court of Appeals similarly emphasized that "a client's legal matter belongs to the client, not the lawyer." *Coudert*, 2014 WL 2931526 at \*5. Because clients have the "unqualified right to terminate the attorney-client relationship at any time without any obligation other than to compensate the attorney for the fair and reasonable value of the *completed services*," the Court held that "no law firm has a property interest in future hourly legal fees." *Id.* ("New York Courts have never suggested that a law firm owns anything with respect to a client matter other than yet-unpaid compensation for legal services already provided.").

Like Heller and Coudert, Howrey does not own the matters that clients previously entrusted to it, and it has no right to profits earned by Jones Day. That is true irrespective of whether a partner left Howrey before or after it formally dissolved. *Heller*, 2014 WL 2609743, at \*5; *Coudert*, 2014 WL 2931526 at \*9; *see also* Part II.A.2, *infra*. Howrey's expectation of future profits "disappear[ed]" when clients exercised their unfettered right to fire Howrey and retain Jones Day. *Heller*, 2014 WL 2609743 at \*6; *see* ECF No. 22 at 33-34; ECF No. 31 ¶ 70. From that point on, any profits resulted from Jones Day's partnership business, not Howrey's, and Howrey had no property interest in them. For this reason alone, as in *Heller* and *Coudert*, Howrey's claim seeking Jones Day's profits fails as a matter of law.

### 2. *Jewel* is Not Controlling

Both Judge Breyer and the New York Court of Appeals further held that *Jewel* and similar cases interpreting and applying the so-called "unfinished business" doctrine are inapposite on the facts of *Heller* and *Coudert*. The analyses by Judge Breyer and the New York Court of Appeals provide the "perfect proxy" for concluding that District of Columbia cases involving the "unfinished business" doctrine are likewise irrelevant here. *Howrey I* at 10.

**a.** As the District Court explained, the "essence" of *Jewel* was that "the departing partners had appropriated work for themselves that could have been performed on behalf of the

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

dissolved firm." *Heller*, 2014 WL 2609743 at *4. In *Jewel*, the dissolved partnership split into two successor firms consisting entirely of partners of the old firm, and each of the two successor firms *could* have continued to represent clients on behalf of the former partnership. *Id.* By contrast, when Heller dissolved, it "lacked the financial ability to continue providing legal services to its clients." This "le[ft] clients with ongoing matters no choice but to seek new counsel and Heller Shareholders no choice but to seek new [law firms]." *Id.*

Moreover, the work in Heller was performed by "pre-existing third-party firms that provided substantively new representation, requiring significant resources, personnel, capital, and services beyond the capacity of either Heller or its individual shareholders." *Id.* The post-dissolution work in *Jewel*, by contrast, was performed entirely by a subset of the old firm. *Jewel*, 156 Cal. App. 3d at 175. This distinction matters, the District Court explained, because *Jewel*'s holding was premised on the fiduciary duties owed *among partners* of a dissolved firm. *Heller*, 2014 WL 2609743 at *4; *see also Jewel*, 156 Cal. App. 3d at 178-79. But in *Heller*, the shareholders dispersed broadly to third-party firms, which "never owed any duty, fiduciary or otherwise, to the dissolved firm." *Heller*, 2014 WL 2609743, at *4. Thus, the District Court held, there is no basis for extending *Jewel* to work performed under "new retainer agreements" between clients and "new firms." *Id.*

Judge Breyer also observed that *Jewel* involved contingency matters, unlike *Heller*, in which only hourly-rate representations were at issue. *See id.* This difference is important because Heller was fully compensated for its own work on hourly matters.

For similar reasons, the New York Court of Appeals likewise concluded that the so-called unfinished business doctrine, "originally articulated and applied by the *Jewel* court," did not apply in the context of Coudert's bankruptcy and liquidation. *Coudert*, 2014 WL 2931526 at *5. Indeed, *Coudert* recognized that neither *Jewel* nor partnership law "defines what makes up the partnership property" that is subject to the state-law duty to account. *Id.* at *7; *see id.* at *4. Because "client matters are not partnership property" of a law firm, the duty to account simply does not apply to profits earned by third-party firms on matters that Coudert abandoned. *Id.* at *5.

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 11 of 26

**b.**     As if these points were not enough, Judge Breyer further held that RUPA "undermines the legal foundation on which *Jewel* rests." *Heller*, 2014 WL 2609743 at \*4. Indeed, *no* published California cases decided under RUPA cite *Jewel* for its unfinished business holding. *Id.* at \*5.

Under RUPA, the duty not to compete "does not extend to winding up the business," and a partner is free to compete with his former partnership immediately upon dissolution or dissociation. § 404(b)(3) cmt. 2; *see also* § 603(b)(2). UPA, by contrast, "touche[d] only sparingly" on these duties and left further development to the common law. *See* § 404 cmt. 1 (citing UPA §§ 4(3) & 21). *Jewel*'s attempt to fill UPA's common-law void has been overtaken by RUPA: "[U]nlike in *Jewel*, if a former Heller Shareholder signed a new retainer agreement with a former Heller client, this would not violate the 'fiduciary duty not to take any action with respect to unfinished partnership business for personal gain.'" *Heller*, 2014 WL 2609743 at \*4 (quoting *Jewel*, 156 Cal. App. 3d at 178-79). "Consequently, there is no provision of the RUPA that gives the dissolved firm the right to demand an accounting for profits earned by its former partner under a new retainer agreement with a client," much less under a new retainer agreement between a client and a third-party firm. *Id.*

**c.**     For all of these reasons, *Jewel* and related cases do not apply here. Like both Heller and Coudert, Howrey "lacked the financial ability to continue providing legal services to its clients." *Id.*; *see* ECF No. 31 at ¶¶ 65-118 (detailing Howrey's "inevitable" "financial downfall," which ensured that "the firm would not survive"). As in *Heller* and *Coudert*, the profits at issue here were earned by third-party firms under new retainer agreements between those firms and clients that fired Howrey. Further, the matters at issue are hourly-rate matters, not contingency-fee cases. And, like Heller, Howrey's partnership agreement is governed by RUPA, not UPA. *See Heller*, 2014 WL 2609743 at \*4. On these facts, Jones Day did not violate a (non-existent) fiduciary duty to Howrey by "appropriat[ing] work for [itself] that could have been performed on behalf of the dissolved firm." *Id.*

Case: 13-03093   Doc# 41   Filed: 07/16/14   Entered: 07/16/14 17:07:23   Page 12 of 26

The Trustee argues that *Beckman v. Farmer*, 579 A.2d 618 (D.C. 1990), *Young v. Delaney*, 647 A.2d 784 (D.C. 1994), and *Robinson v. Nussbaum*, 11 F. Supp. 2d 1 (D.D.C. 1997), all follow *Jewel*. (ECF No. 38 at 8, 10; ECF No. 22 at 20.) Like *Jewel*, these three cases are inapposite. *Compare Howrey I* at 6-10. Each of them was decided under UPA. No D.C. cases decided under RUPA involving either pre- or post-dissolution partner departures follow *Beckman*, *Young*, or *Robinson* for their holdings regarding so-called unfinished business. Moreover, in each of these three cases, as in *Jewel*, there was an identifiable successor firm, consisting entirely of partners from the dissolved firm, that continued to represent the dissolved partnership's clients. *Beckman*, 579 A.2d at 625; *Young*, 647 A.2d at 787; *Robinson*, 11 F. Supp. 2d at 2. The work at issue was performed under the original retainer agreement between the client and the old firm, rather than under new agreements signed with a third-party firm. *See Beckman*, 579 A.2d at 636 & n.24; *see also Young*, 647 A.2d at 786-87; *Robinson*, 11 F. Supp. 2d at 2.

Finally, this Court previously concluded that expanding its definition of "unfinished business" to include pre-dissolution matters was a logical extension of *Jewel* and *Heller*. *Howrey I* at 20 (stating that "there is no reason to limit the definition of Howrey Unfinished Business to matters pending as of dissolution"). But viewing client matters as property of a law firm at any time, pre- or post-dissolution, "simply does not comport with our profession's traditions and the commercial realities of the practice of law today." *Coudert*, 2014 WL 2931526 at *9. And because *Jewel* is not controlling here, there is no basis for extending its reasoning to pre-dissolution claims. Likewise, because a former partner is free to compete with the partnership immediately upon dissolution *or dissociation*, *see* D.C. Code § 33-106.03(b)(3), "there is no provision of the RUPA that gives the [partner's former] firm the right to demand an accounting for profits earned by its former partner under a new retainer agreement with a client"—much less under a new retainer agreement between a client and a third-party firm. *Heller*, 2014 WL 2609743, at *4. *Compare Howrey I* at 26 (concluding that a dissociating partner's duty to account under D.C. Code § 33-106.03(b)(3) justifies expanding the duty to account to pre-dissolution matters). Indeed, while a dissociated partner must still account for profits that he

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 13 of
26

earns from his former firm's "partnership business," D.C. Code § 33-104.04(b)(1), the matters at issue ceased to be Howrey's "partnership business" when clients exercised their unfettered right to terminate Howrey and retain Jones Day. *See Heller*, 2014 WL 2609743, at *6; *Coudert*, 2014 WL 2931526, at *5.

### 3. Equity and Public Policy Bolster the Conclusion that a Dissolved Firm Has No Right to Profits It Did Not Earn

Both Judge Breyer and the New York Court of Appeals further concluded that equity and public policy weigh strongly against a rule that forces third-party firms to turn over their profits to a dissolved firm that contributed nothing to performing the work. The same is true here.

"A bedrock of the commercial legal profession is that lawyers expect to be paid for services they provide to their clients, and clients expect to pay the firm that employs the lawyers who provide their services." *Heller*, 2014 WL 2609743 at *5-7. Moreover, "[l]aw firms accepting a new client, even for an hourly-fee matter, must be prepared to invest considerable resources: attorney salaries; malpractice insurance; administrative support; research fees; document preparation; space allocation; opportunity costs; and so on." *Id.* at *7. In light of these substantial investments, "[n]o firm can be expected to contribute those resources if they are not entitled to retain the corresponding profits." *Id.* A "rule that prevents third-party firms from earning a profit off of labor and capital investment they make in a matter previously handled by a dissolved firm" would "discourage third-party firms" from accepting such matters and taking on former partners of a dissolved firm in the first place. *Id.* That "is not in the public interest." *Id.*

Contrary to this Court's previous analysis, these equitable and policy considerations require dismissal of the FAC. *Compare Howrey I* at 16 ("[A]s this court held in *Heller II*, the right of a client to choose its lawyers is not implicated here."); *id.* at 17 (concluding that the Trustee's position would not impede attorney mobility). The Trustee seeks profits earned by Jones Day for work that Jones Day performed, with no contribution by Howrey. In addition to creating an "unjust windfall" for dissolving firms, *Coudert*, 2014 WL 2931526 at *7, the Trustee's position would "make it more difficult for partners leaving a struggling a firm to find new employment" and "limit the representation choices a client has available," *Heller*, 2014 WL

Jones Day's Reply Mem. of Points & Authorities in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 14 of 26

2609743 at *7. "The notion that law firms will [take on] departing partners or accept client engagements without a promise of compensation ignores commonsense and marketplace realities." *Coudert*, 2014 WL 2931526 at *8.

Just as *Jewel* did not grapple with these policy implications, *see Heller*, 2014 WL 2609743 at *5-7, neither did *Beckman*, *Young*, or *Robinson*. *Beckman* noted in passing that "[t]he duty to wind up partnership business does not disable the former partners in a law firm from accepting employment from former clients of the dissolved partnership" on new matters. 579 A.2d at 638. But it said nothing about the implications of its holding for a client's choice of counsel on *pending* matters (nor did it address any other policy consequences of its holding, such as the effect on lawyer mobility). As Judge Breyer explained, "the Trustee's position would all but force former Heller clients"—left in the lurch by a law firm that could no longer serve them— "to retain new counsel with no connection to Heller or their [pending] matters." *Heller*, 2014 WL 2609743 at *7 n.10. "Followed to its logical conclusion, the [Trustee's] approach would cause clients, lawyers, and law firms to suffer …." *Coudert*, 2014 WL 2931526 at *8.

### 4. The Trustee's Attempts to Evade the District Court's Decision in *Heller* Are Unavailing

The Trustee's attempts to distinguish and avoid Judge Breyer's decision are meritless.

*First*, the Trustee argues that a district court's decision does not bind this Court. (ECF No. 38 at 6.) Whether or not that is true,[3] it is beside the point because this Court has relied on its *Heller* decisions at every turn in this case. *Howrey I* at 5 n.6, 6, 13-16, 20, 22, 23, 25-26. Against this backdrop, the Trustee cannot credibly argue that *Heller* "does not affect" the current

---

[3] Federal courts are split on whether a bankruptcy court is bound by the decision of district court within the district. *See, e.g.*, *In re Romano*, 350 B.R. 276 (Bankr. E.D. La.2005). Neither the Ninth Circuit nor the Northern District of California has squarely addressed the question. *See State Compensation Ins. Fund v. Zamora* (*In re Silverman*), 616 F.3d 1001, 1005 & n.2 (9th Cir. 2010) (holding that district court decisions do not bind bankruptcy courts outside the district, and noting that "[t]his case does not present the question whether bankruptcy courts are bound by all the decisions of all the district judges within the district where the bankruptcy court sits"); *see also In re Linda Vista Cinemas, L.L.C.*, 442 B.R. 724, 747 (Bankr. D. Ariz. 2010) (describing question as "unsettled"). *But see Life Ins. Co. v. Barakat* (*In re Barakat*), 173 B.R. 672, 678-679 (Bankr. C.D. Cal. 1994) (district court decisions do not bind bankruptcy court in same district); *In re Hill*, 440 B.R. 176, 180 (Bankr. S.D. Cal. 2010) (same).

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 15 of 26

proceedings. (ECF No. 38 at 5.) The District Court's reversal of the very decision on which this Court based its earlier ruling in this case provides substantial grounds for the Court to revisit previous questions. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (courts have discretion to depart from law of the case where "the first decision was clearly erroneous" or "an intervening change in the law has occurred").

Relatedly, the Trustee distinguishes *Heller* as involving California law. (ECF No. 38 at 6-7.) But the Trustee cannot have it both ways: Having previously encouraged this Court to rely on its decisions in *Heller* (ECF No. 22), the Trustee cannot claim that *Heller* is irrelevant now that this Court's decisions have been reversed. In any event, the questions in this case do not hinge on peculiarities of different states' laws. Rather, as both Judge Breyer and the New York Court of Appeals recognized, they implicate core principles such as ownership of client matters, the attorney-client relationship, attorney mobility, and clients' right to choose counsel. *See Heller*, 2014 WL 2609743 at *5-7; *Coudert*, 2014 WL 2931526 at *5, 7-9. These bedrock principles are universally recognized across jurisdictions, including in the District of Columbia. *See, e.g.*, *In re Robert W. Mance, III*, 980 A.2d 1196, 1202-04 (D.C. 2009) (clients have an "unfettered right to discharge an attorney," and attorneys can "earn[] fees only by conferring a benefit on or performing a legal service for the client" (internal quotation marks omitted)); *Neuman v. Akman*, 715 A.2d 127, 130-31 (D.C. 1998) (stressing the importance of protecting client choice).

*Second*, the Trustee accuses the District Court of ignoring decisions that have "analyzed *Jewel* and applied the Unfinished Business Rule to a law firm's hourly fee matters." (ECF No. 38 at 10.) But the Trustee cannot cite a single published appellate decision that (a) was decided under RUPA, not UPA, and (b) involved claims against a third-party firm for profits from matters that a dissolving firm abandoned. And the principal lower-court decisions on which the Trustee relies—*Brobeck* and the district court's decision in *Coudert*—are wrong for the reasons explained by Judge Breyer and the New York Court of Appeals. *See Part II.A.1-3, supra*.

*Third*, the Trustee attempts to mitigate the consequences of his proposed rule by suggesting that it should "merely" be adopted as a default rule that "[l]awyers can . . . contract

Case: 13-03093   Doc# 41   Filed: 07/16/14   Entered: 07/16/14 17:07:23   Page 16 of 26

around." (ECF No. 38 at 10.) But the *Coudert* court unequivocally rejected this same argument, finding that the Trustee's position created a "deficiency beyond the capacity of a *Jewel* waiver to cure." *Coudert*, 2014 WL 2931526 at *9. Moreover, default rules are fashioned to provide an equitable or efficient arrangement for the vast majority of cases, in the absence of an express agreement. Richard A. Epstein, *In Defense of the Contract at Will*, 51 U. CHI. L. REV. 947, 951 (1984) ("The rule of construction is normally chosen because it reflects the dominant practice in a given class of cases and because that practice is itself regarded as making good sense for the standard transactions it governs."). A default rule that parties must routinely modify to comport with public policy and preserve client choice contravenes the very purpose of default rules in the first place.

*Fourth*, the Trustee concocts a hypothetical—which he asserts without explanation, represents "the typical default scenario"—in which a partner of a small law firm withdraws and the client follows him to his new practice, leaving the remaining partners unable to satisfy the partnership's debts. (ECF No. 38 at 11-12.) But, subject to limited exceptions not implicated by the Trustee's hypothetical, RUPA expressly allows a partner to "dissociate at any time, rightfully or wrongfully, by express will." § 602(a)-(b); *see also* Bromberg & Ribstein on Partnership § 7.01[D][1] (2d ed. 2014) ("Because a partnership is a consensual relation, an individual partner should have the right and power to dissociate if not in contravention of the partnership agreement."). RUPA also allows the dissociating partner to compete with the partnership "immediately" and "without any further consent." § 603(b)(2) & cmt. 2; *see* § 404(b)(3) cmt. 2. RUPA thus permits precisely the scenario that the Trustee hypothesizes. Moreover, if, in the Trustee's hypothetical, the remaining partners cannot satisfy their debts, that may well be because they overextended themselves and because the dissociated partner was handling a disproportionate amount of the partnership's business. There is nothing unfair about such a partner's statutorily authorized choice to withdraw, or the client's unfettered right to terminate the old partnership.[4]

---

[4] Relatedly, the Trustee accuses Jones Day of advocating a special rule for large firms. (ECF No. 38 at 11 &

Case: 13-03093   Doc# 41   Filed: 07/16/14   Entered: 07/16/14 17:07:23   Page 17 of 26

*Fifth*, the Trustee asserts that his proposed rule has not yet produced any ill effects (ECF No. 38 at 10), but that is because no appellate court has ever adopted his novel and erroneous theory. Indeed, before *Brobeck* in 2008, *no* court had imposed liability on third-party firms for profits earned from their own work. *Brobeck* was never reviewed on appeal, and—as the decisions by Judge Breyer and the New York Court of Appeals demonstrate—it was wrongly decided.

*Sixth*, the Trustee claims that "no lawyer has been forced to work for free" because "at worst, the lawyers would work at cost." (*Id.* at 13.) But for lawyers, whose "stock in trade" is "time and advice," *United States v. Bertoli*, 994 F.2d 1002, 1023 (3d Cir. 1993), working at cost is working for free. The Trustee argues that it is no "travesty" to work on "one matter" for a "short time." (ECF No. 38 at 13.) But the Trustee seeks to recover profits that Jones Day earned on far more than a single matter, and the reality is that "[l]egal matters have a way of dragging on," *Heller*, 2014 WL 2609743 at *6, for years or even decades. Nor is it any consolation that the lawyers might secure future business from clients. (ECF No. 38 at 13.) Future business is never a guarantee, and many clients do not have recurring legal needs. Moreover, although lawyers sometimes *choose* to provide free or discounted services to clients for various reasons, D.C. law does not *force* third-party firms to bear that burden. (*See id.*)

*Finally*, with no answer to the obvious point that law firms, like other businesses, are entitled to be paid for their work, the Trustee miscasts Jones Day as arguing that "a lawyer's effort for his client [i]s dependent on how much profit the client generates for the lawyer's firm." (*Id.* at 13.) Lawyers, like everyone else, need to make a living. Furthermore, "[l]aw firms

_____

(continued…)

n.3.) The relevant question—which does not turn on the size of a law firm—is whether a former partner has breached a fiduciary duty to account to his former firm for profits from partnership business. For reasons explained above, *see* Part II.A.2, *supra*, that is not what happened here. Moreover, the Trustee mischaracterizes the transcript that he cites from a hearing in a different case. *See Heller Erhman LLP v. Jones Day*, Adv. P. No. 10-03221 (Bankr. N.D. Cal.), Docket #144 at 16:6-10 (acknowledging that "[u]nder the logic of *Jewel*," and under UPA rather than RUPA, an individual partner would have a duty to account if he "continued to perform the work *under the same engagement letter* that [his former partnership] had in place or signed a separate engagement letter *that a court deemed a sham transaction*") (emphasis added).

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093   Doc# 41   Filed: 07/16/14   Entered: 07/16/14 17:07:23   Page 18 of 26

accepting a new client, even for an hourly-fee matter, must be prepared to invest considerable resources: attorney salaries; malpractice insurance; administrative support; research fees; document preparation; space allocation; opportunity costs; and so on." *Heller*, 2014 WL 2609743, at *7. In light of these investments, "[n]o firm can be expected to contribute those resources if they are not entitled to retain the corresponding profits." *Id.* Thus, although the Trustee claims that his position has no effect on client choice (ECF No. 38 at 13), "[t]he notion that law firms will [take on] departing partners or accept client engagements without the promise of compensation ignores commonsense and marketplace realities." *Coudert*, 2014 WL 2931526 at *8.

**B.     THE TRUSTEE'S CLAIMS REGARDING PRE-DISSOLUTION MATTERS FAIL FOR ADDITIONAL, INDEPENDENT REASONS**

In any event, the Trustee's claims regarding the pre-dissolution matters fail for the independent reasons explained in Jones Day's Motion to Dismiss the FAC. The Trustee's contrary arguments are unavailing.

**1.     The Trustee's Claim for Equitable Accounting Fails Because Jones Day Has No Fiduciary Duty To Howrey**

The Trustee's claim for equitable accounting fails as a matter of law because, as the Trustee concedes, Jones Day never had any fiduciary duty to Howrey. (ECF No. 38 at 10.)

**a.**     Under D.C. law, an accounting claim fails if there is no fiduciary relationship between the parties. In *Haynes v. Navy Fed. Credit Union*, -- F. Supp. 2d --, 2014 WL 2591371 (D.D.C. Jun. 10, 2014), the plaintiff sought an accounting from his mortgage company for allegedly misapplied escrow payments. Although it was unclear whether the plaintiff was bringing "a legal claim for what has historically been referred to as an 'action of account'" or whether he was seeking "an accounting in equity," the court held that both claims failed because the defendant had no fiduciary duty to the plaintiff. *Id.* at *6-7. It explained that an action of account, to whatever extent it remains viable today, "'lies where one has received goods or money for another *in a fiduciary capacity*'" and "'can only be maintained where there is such a relationship between the parties.'" *Id.* (quoting Black's Law Dictionary (9th ed. 2009))

13

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 19 of
26

(emphasis added); *id.* at *7 (describing the action as "almost obsolete"). Similarly, "an accounting in equity" (like a claim under 11 U.S.C. § 542) is not a "a stand-alone claim," but rather "a remedy premised on a breach of fiduciary duty or contract." *Id.* In the absence of any such breach, "the remedy of an accounting would be inappropriate." *Id.*

D.C. law accords with the common law, *see, e.g.*, C.C. Langdell, *A Brief Survey of Equity Jurisdiction*, 2 HARV. L. REV. 241, 248 (1887), and with the law of countless other jurisdictions, *see* ECF No. 36-1 at 10-11 (collecting cases). The requirement of a fiduciary relationship makes good sense because the whole point of an accounting is to force the defendant to demonstrate that he has performed his fiduciary duty to the plaintiff regarding property with which he has been entrusted. *Cafritz v. Corporation Audit Co.*, 60 F. Supp. 627, 631 (D.D.C. 1945) ("It is well established that when the defendant is an accounting party, and stands as one occupying a fiduciary relation toward the plaintiff, because of money or property intrusted [sic] to him, the burden is upon him to show that he has performed his trust and the manner of its performance.").

The Trustee's concession that Jones Day owes no fiduciary duty to Howrey thus disposes of the accounting claim in the FAC. (ECF No. 38 at 10.)

**b.** The Trustee argues that his need for discovery justifies an accounting claim against Jones Day. (ECF No. 38 at 19.) But modern discovery procedures have displaced freestanding accounting claims as discovery tools. *See* Dan B. Dobbs, LAW OF REMEDIES, vol. I, 610 (2d ed. 1993); *Kirksey Motors, Inc. v. General Acceptance Corp.*, 276 Ala. 270 (1964) (dismissing accounting claim based on need for discovery because discovery was available through other means); *Burr v. State Bank*, 344 Il1. App. 332 (1951) (same). Absent a fiduciary relationship, the use of an accounting to "ascertain the amount of damages" is "insufficient" to support an accounting claim. *Terner v. Glickstein & Terner*, 283 N.Y. 299, 303 (1940).

The cases cited by the Trustee are not to the contrary because they all involved a fiduciary relationship among the parties. For example, in *Robinson*, 11 F. Supp. 2d at 2-3, and *Warren v. Chapman*, 535 A.2d 856, 863 (D.C. 1987), all of the parties were former partners who allegedly owed each other fiduciary duties under UPA. *See also Cobbell v. Babbit*, 30 F. Supp. 2d 24, 42

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 20 of
26

(D.D.C. 1998) ("plaintiffs seek an accounting under the basic fiduciary relationship governed by the law of trusts"); *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 74 (D.D.C. 2006) (defendants were plaintiff's "duly certified fiduciar[ies]" authorized to receive and apply federal funds for plaintiffs' "use and benefit"); *Rosenak v. Poller*, 290 F. 2d 748, 750 (D.C. Cir. 1961) (defendant's fiduciary duty was created by his contract with plaintiff).[5]

**c.**     Any alleged fiduciary duty by the former Howrey partners to Howrey cannot be attributed to Jones Day.  The Trustee claims that the "nature of [Jones Day's] liability is determined through the principal-agent relationship between the Pre-Dissolution Partners (the agents) and [Jones Day] (the principal[])." (ECF No. 38 at 20 n.9.)  But under D.C. law, a principal's right to control its agent's activities is "an essential prerequisite to any claim based on vicarious liability."  *McDevitt v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 160, 168 (D.D.C. 2013).  The right to control must extend to the specific conduct giving rise to the alleged injury.  *See id.*; *see also Amoco Oil Co. v. EPA*, 543 F.2d 270, 276 (D.C. 1976); *Omega Contracting, Inc. v. Torres*, 191 S.W.3d 828, 847 (Tex. App. 2006) ("To trigger vicarious liability, the right of control must extend to the specific activity from which the injury arose.").

Here, Howrey's alleged injury stems from the individual partners' failure to account to their former partnership—an alleged duty that, under RUPA, is a personal duty among partners.  That alleged duty, moreover, stems from partnership obligations that the Howrey partners undertook before they ever became partners of Jones Day.  Jones Day has no right to control its partners' actions regarding such personal duties that predate their affiliation with Jones Day, which are outside the scope of Jones Day's business.  Indeed, the former Howrey partners' personal duty to account to Howrey is no more within Jones Day's control than the partners' personal duty to pay income taxes based on their compensation from Jones Day.

---

[5] *Donovan v. U.S. Postal Serv.*, 530 F. Supp. 894 (D.D.C. 1981), does not support the Trustee's position. That case involved violations of the rights of hundreds of thousands of postal workers under the Fair Labor Standards Act.  Given the public interest involved, the Court noted that its equitable powers were "even broader and more flexible … than when only a private controversy is at stake."  *Id.* at 900.  It determined that an accounting was appropriate in light of the complexity of the 500,000-700,000 accounts at issue.  *Id.* at 901.  The accounts at issue in this "private controversy" are not nearly so complex, nor has the Trustee suggested that this situation is remotely similar to *Donovan*.

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093   Doc# 41   Filed: 07/16/14   Entered: 07/16/14 17:07:23   Page 21 of 26

The cases cited by the Trustee provide no support for his expansive view of vicarious liability. The district court's opinion in *Coudert* is not good law. *See Coudert*, 2014 WL 2931526 at *6 (noting that cases imposing a duty to account "have involved disputes between a dissolved partnership and a departing partner, not outside third parties"). *Convit v. Wilson*, 980 A.2d 1104, 1114 (D.C. 2009), involved an employer's liability for medical malpractice committed by one of the doctors it employed—an action clearly within the scope of the doctor's employment. And in *Avianca Inc. v. Corriea*, No. 85-3277, 1992 WL 93128 (D.D.C. Apr. 13, 1992), one of two partners in a law firm breached his fiduciary duties to the plaintiff in the course of providing legal services; in that context, the co-partner, who both knew of and acquiesced to the breaches, was jointly liable.

## 2. The FAC Fails to State a Claim for Unjust Enrichment Under D.C. Law

The Trustee also fails to state a claim for unjust enrichment because Howrey did not confer any benefit on Jones Day, and because it is not unjust for Jones Day to retain fees that it earned.

a. *First*, D.C. law authorizes an unjust enrichment claim only if the *plaintiff* confers a benefit on the defendant. For example, in *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114 (D.D.C. 2007), the plaintiff's employment contract "required her to raise sufficient money, though either fund-raising or her own funds, to cover the costs of her missionary work." *Id.* at 117. When she was wrongfully terminated, she argued that her employer was unjustly enriched by retaining the funds she had solicited from donors. *Id.* at 122-23. Because the "benefit was conferred by third parties who made charitable donations to [the employer]" and was not conferred by the plaintiff herself, the court dismissed her claim. *Id.* at 123. Other D.C. cases also reject unjust enrichment claims in which a third party confers the benefit, even if the plaintiff plays some indirect role in the defendant's receipt of the benefit. *See Int'l Bhd. of Teamsters v. Ass'n of Flight Attendants*, 663 F. Supp. 847, 854 (D.D.C. 1987); *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-332, 2006 WL 2711527, at *21 (D.D.C. Sept. 21, 2006).

Here, the Trustee concedes that *Howrey* did not confer any benefit whatsoever on Jones

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093    Doc# 41    Filed: 07/16/14    Entered: 07/16/14 17:07:23    Page 22 of 26

Day, and that any purported benefit, on the Trustee's theory, came from third parties, namely the former Howrey partners. (ECF No. 38 at 25.) That concession alone forecloses the Trustee's unjust enrichment claim. Moreover, the Trustee's theory is implausible as a matter of law. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The former Howrey partners never gave Jones Day anything: *Clients* paid Jones Day for work that they retained Jones Day to perform, and the former Howrey partners never had any control over those fees.

*Second*, even when a plaintiff confers a benefit on the defendant, the defendant is liable only if retaining the benefit is unjust. *News World Commc'ns Inc. v Thompson*, 878 A.2d 1218, 1222 (D.C. 2005). There is nothing unjust about Jones Day keeping profits for work that it performed. *Heller*, 2014 WL 2609743 at *5; *Coudert*, 2014 WL 2931526 at *7-8.

**b.** None of the Trustee's authorities support his argument that unjust enrichment claims may be based on benefits conferred by a third party. (ECF No. 38 at 24.)

In *Bates*, 466 F. Supp. 2d at 102-103, the court held that the defendants were unjustly enriched when they misappropriated federal benefits that they held in trust as fiduciaries for the plaintiffs. In that context, where the payments were "intended for the plaintiffs" and the defendants breached their fiduciary duty with respect to the funds, the court held that the plaintiffs conferred a benefit on the defendants. *Id.* But *Bates* does not support the Trustee's claim for unjust enrichment here: Jones Day received money from clients that the clients intended to compensate Jones Day, not Howrey, and Jones Day had no fiduciary duty to Howrey.

*In re Lorazepam & Clorazepate*, 295 F. Supp. 2d 30 (D.D.C. 2003), is similarly inapposite. There is no indication of which state's law governed the plaintiffs' unjust enrichment claims in that case, and the plaintiffs expressly brought their other claims under Illinois, Minnesota, and Massachusetts law. *Id.* at 33-34, 37, 43. The Trustee relies on *Lorazepam*'s citation of an Illinois case, *State Farm Gen. Ins. Co. v. Stewart*, 681 N.E.2d 625, 633 (Ill. App. Ct. 1997), that allows unjust enrichment claims where the benefit "was transferred to the defendant by a third party." (ECF No. 38 at 23, 25-26.) But *Nevius* confirms that D.C. law is to the contrary. 511 F. Supp. 2d at 122-23.

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093   Doc# 41   Filed: 07/16/14   Entered: 07/16/14 17:07:23   Page 23 of 26

The Trustee relies on § 48 of the Restatement (Third) of Restitution and Unjust Enrichment, which authorizes unjust enrichment claims where a third party conferred the benefit. But the Trustee *concedes* that no D.C. court has adopted this provision. (ECF No. 38 at 24-25 & n.12.) In any event, even if § 48 of the Restatement applied in D.C., it would not support the Trustee unless, "as between [Howrey] and [Jones Day]," Howrey "has a better legal or equitable right" to the profits. Restatement (Third) of Restitution and Unjust Enrichment § 48 (2011). Rather than weighing each party's equitable interest, the Trustee simply declares that his claim— to *all* of the profits from the matters at issue—is superior. (ECF No. 38 at 26.) He disregards Jones Day's interest, which is based on the "bedrock of the commercial legal profession … that lawyers expect to be paid for services they provide to clients." *Heller*, 2014 WL 2609743 at *5. Indeed, there would be no profits at all without Jones Day's considerable investments. *See Heller*, 2014 WL 2609743 at *7; *Coudert*, 2014 WL 2931526 at *8. "[I]n terms of fairness, the Trustee cannot argue that [Jones Day] received a windfall—[Jones Day] did the work." *Heller*, 2014 WL 2609743 at *5. Thus, the equities plainly favor Jones Day. *See id.*

### 3.   The Trustee's § 542 Claims for Accounting and Turnover Are Legally Unsupportable

The Trustee's claims under § 542 also fail as a matter of law. This Court has already dismissed a virtually identical claim, and its reasons for doing so dictate dismissal here. *Compare* ECF No. 1 ¶¶ 165-171 *with* ECF No. 31 ¶¶ 171-181. Both then and now, the Trustee alleges, without identifying any cognizable property interest in the profits at issue, that "RUPA" requires that the profits "be held in trust," and that § 542 allows "the Trustee [to] prosecute a turnover action." *Howrey I* at 24; *see* ECF No. 31 ¶¶ 175, 180.

The Trustee suggests that dividing his accounting and turnover claims into two separate counts somehow distinguishes them from the claims that this Court previously rejected. But whether or not an accounting shows the profits earned by Jones Day, the Trustee cannot show that Howrey is entitled to those profits. The rote task of splitting the claims into two counts does nothing to cure the *substantive* deficiency that this Court previously identified—namely, that the Trustee "assumes the conclusion [he] desires" because he "presume[s]" that any alleged profits

Case: 13-03093   Doc# 41   Filed: 07/16/14   Entered: 07/16/14 17:07:23   Page 24 of 26

are Howrey's property.  *Howrey I* at 24.

Indeed, the Trustee's § 542 claims fail because the Trustee cannot identify any undisputed property interests belonging to Howrey that are subject to accounting and turnover.  The Trustee concedes that § 542 does not itself create any property interests, arguing instead that D.C. partnership law creates Howrey's property interest in the profits at issue.  (ECF No. 38 at 18 n.7.) For reasons explained above, *see* Part II.A, *supra*, that is wrong.  *See also Coudert*, 2014 WL 2931526 at *4 ("[T]he Partnership Law does not define property; rather, it supplies default rules for how a partnership upon dissolution *divides* property as elsewhere defined in state law.").  Nor, for the reasons discussed above, do the Trustee's equitable accounting and unjust enrichment claims establish any property interest.  In the absence of any property that "is acknowledged to belong to the bankruptcy estate," there is no basis for accounting or turnover under § 542. *Glassey v. Amano Corp.*, No. 05-01604, 2006 WL 889519, at *4 (N.D. Cal. Mar. 31, 2006); *see In re Gurga*, 176 B.R. 196, 199 (9th Cir. B.A.P. 1994).

### C.  IN THE ALTERNATIVE, THIS COURT SHOULD ABSTAIN FROM DECIDING THESE IMPORTANT AND NOVEL STATE-LAW QUESTIONS

If this Court does not dismiss the FAC, then it should abstain from deciding the state-law questions at issue.  *See* 28 U.S.C. § 1334(c)(1).  The critical questions in this case involve "purely state law issues," *In re Pac. Gas & Elec. Co.*, 279 B.R. 561, 570 (Bankr. N.D. Cal. 2002), and Plaintiff's theories are "breaking new ground," (Trans. of Proc., *Diamond v. Jones Day LLP*, Adv. P. No. 13-03093, at 24 (Mar. 25, 2014, ECF No. 34)).  This Court's lack of authority to finally adjudicate Plaintiff's claims, which are non-core, further "weigh[s] in favor of abstention." *In re Eastport Assoc.*, 935 F.2d 1071, 1077 (9th Cir. 1991); *see Stern v. Marshall*, 131 S. Ct. 2594 (2011); *Exec. Benefits Ins. Agency v. Arkison*, 702 F.3d 553, 565 (9th Cir. 2012), *aff'd* 573 U.S. __, 134 S. Ct. 2165 (2014).  Finally, to the extent that the state-law questions in this case are unsettled, they may ultimately need to be decided by the D.C. Court of Appeals.  Only the Ninth Circuit can certify questions to that Court, *see* D.C. Code § 11-723(a), and it would be far more efficient for this Court to abstain so that the Trustee may bring his claims against Jones Day in

Jones Day's Reply Mem. of Points & Authorities
in Supp. of Mot. to Dismiss First Am. Compl.

Case: 13-03093   Doc# 41   Filed: 07/16/14   Entered: 07/16/14 17:07:23   Page 25 of 26

state court.

Contrary to the Trustee's argument (ECF No. 38 at 28), this Court has discretion to abstain even if no state-court action is pending. "[A] parallel proceeding in state court" is a prerequisite for abstention only when an action was removed to federal court and consequently presents questions regarding "the interrelationship between" the federal removal and abstention statutes, 28 U.S.C. §§ 1334(c) and 1452(b). *Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1009 (9th Cir. 1997); *In re Lazar*, 237 F.3d 967, 982 n.17 (9th Cir. 2001) (citing *Security Farms*, 124 F.3d at 1010 ("To require a pendant state action as a condition of abstention eliminates any confusion with 28 U.S.C. § 1452(b)...."). Where, as here, the proceeding was not removed from state court in the first place, there is no tension between §§ 1334(c) and 1452(b), and "[a]bstention is not barred merely because there is no pending state-court proceeding." *In re Hatfield*, Adv. P. No. 08-3140, 2009 WL 2849538, at *2 (Bankr. N.D. Cal. Jul. 17, 2009).

## III. <u>CONCLUSION</u>

For these reasons, the Court should dismiss the Plaintiff's First Amended Complaint with prejudice. In the alternative, the Court should abstain from hearing this case so that Plaintiff's state-law claims can be brought in state court.

Dated: July 16, 2014                          JONES DAY


                                              By:     /s/ Jason McDonell
                                                      Jason McDonell

                                              Attorneys for Defendant
                                              JONES DAY